IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOISES GARCIA,<br><br>    Plaintiff,<br><br>    vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant.<br>_____/ | No. 2:12-CV-1254-CMK<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 16) and defendant's cross-motion for summary judgment (Doc. 17).

/ / /

/ / /

/ / /

1

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on November 12, 2008. In the application, plaintiff claims that disability began on March 18, 2004. Plaintiff claims that disability is caused by a combination of degenerative disc disease, neck and back spasms, carpal tunnel syndrome, left knee weakness, headaches, leg pain, depression, and difficulty concentrating and completing tasks. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on July 14, 2010, before Administrative Law Judge ("ALJ") Peter F. Belli. In an August 25, 2010, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): cervical degenerative disc disease; a left-sided sacroilic strain; a hyperflexion injury of the vertebral column and to the neck and spine; and headaches;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: full range of light work;

4. Considering the claimant's age, education, work experience, residual functional capacity, and the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on March 9, 2012, this appeal followed.

# II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole,

2

including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ erred by failing to find that his carpal tunnel syndrome and depression are severe impairments; (2) the ALJ erred in evaluating the medical opinion evidence; (3) the ALJ failed to articulate sufficient reasons for rejecting his testimony as not credible; (4) the ALJ failed to properly address lay witness evidence; and (5) the ALJ erred in applying the Medical-Vocational Guidelines.

**A.     Severity Determination**

In order to be entitled to benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir.

1  1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment,

2  or combination of impairments, can only be found to be non-severe if the evidence establishes a

3  slight abnormality that has no more than a minimal effect on an individual's ability to work.  See

4  Social Security Ruling ("SSR") 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.

5  1988) (adopting SSR 85-28).  The plaintiff has the burden of establishing the severity of the

6  impairment by providing medical evidence consisting of signs, symptoms, and laboratory

7  findings.  See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone

8  is insufficient.  See id.

9          Plaintiff argues that the ALJ erred with respect to his carpal tunnel syndrome and

10  depression.

        1.    <u>Mental Impairments</u>

        Regarding mental impairments, the ALJ stated:

> Although the claimant alleges that he is unable to work due, in part, to depression and an inability to concentrate, the evidence does not establish a history of mental illness.  There is no medical evidence in the record to support the claimant's alleged mental impairments.  The record does not reflect that the claimant has ever been treated for any mental impairment.  Thus, there is no longitudinal relationship with a mental health professional to support the claimant having a medically determinable mental impairment. . . .
>
> On consultative evaluation, the claimant had good hygiene and he was appropriately dressed (Exhibit 5F/3).  His thought processes are relevant, goal directed, and organized.  He was oriented to person, time, and place.  He had no obvious obsessions or delusions (Exhibit 5F/3).  The claimant indicated no limitations in activities of daily living, social activities, or episodes of decompensation attributable to a mental impairment.  In fact, he reported no problems with his personal care, and he indicated that he spends times with his friends and neighbors twice a week (Exhibit 9E/2, 5).  In testing the claimant's memory, he was able to recall 4/4 objects immediately and 2/4 after five minutes.  The claimant's recent memory was fair, as he was able to recall events from the day prior to the evaluation (Exhibit 4F/5).  His overall fund of information was within normal limits, and his insight and judgment were fair (Exhibit 5F/4).  Consultative psychiatrist Keith Whitten, M.D., opined the claimant's mental impairments only have a mild to moderate impairment on his ability to work (Exhibit 5F/5).

///

> Evaluating the entire record as a whole, the undersigned finds that the claimant's mental impairment causes only mild limitation in his ability to perform activities of daily living, to engage in social functioning, and to perform activities requiring concentration, persistence, or pace. There is no evidence that the claimant has ever had an episode of decompensation. Such findings are consistent with those of the State Agency, which concluded that the claimant did not have a sever mental impairment (Exhibit 6F). Similarly, Dr. Gutierrez, the claimant's primary care physician, reported that he does not see any limitation or restriction on the claimant's mental abilities (Exhibit 8F/1).
>
> Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere. . . .

Based on plaintiff's own statements contained in a function report submitted with his application for benefits, the court finds no error in the ALJ's severity analysis concerning plaintiff's alleged mental impairments. Specifically, plaintiff did not indicate that he was unable to do anything now that he could do before his impairments. Plaintiff did not indicate any problems with personal care. In short, plaintiff did not allege any mental problems. And, as the ALJ noted, primary care physician Dr. Gutierrez stated on June 26, 2009: "I see no limitations or restrictions on mental abilities to date."

      2.     <u>Carpal Tunnel Syndrome</u>

Regarding carpal tunnel syndrome, the ALJ stated:

> . . .The claimant alleged an inability to work due to . . . carpal tunnel syndrome. Although a nerve conduction study did reveal enough distal latencies in the median nerves to support a diagnosis of bilateral carpal tunnel, the claimant has failed to submit medical evidence reflecting more than isolated treatment for this impairment. . . . (Exhibit 19F/4).

The ALJ concluded that plaintiff carpal tunnel syndrome was not a severe impairment because there was no evidence that it caused more than a minimal effect on plaintiff's ability to work.

The court finds no error. While plaintiff argues that there is no requirement that treatment meet any duration requirement, the ALJ may discount the alleged severity of an impairment based on the lack of treatment. Further, though plaintiff points to portions of the record showing that he experienced hand pain and numbness, plaintiff has not pointed to

evidence that these symptoms cause more than minimal limitations on work functions.

### B. Evaluation of Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining

1  professional. See id. at 831. In any event, the Commissioner need not give weight to any
2  conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111,
3  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);
4  see also Magallanes, 881 F.2d at 751.
5          Plaintiff argues that the ALJ improperly rejected the opinion of treating physician
6  Dr. Madireddi and consultative psychiatrist Dr. Whitten.
7          1.      Dr. Madireddi
8          As to Dr. Madireddi, the ALJ stated:

> . . .Dr. Madireddi opined the claimant is limited to bearing no weight more than 6 hours out of an 8-hour workday; lifting no more than 20 lbs. Frequently and 25 lbs. Occasionally; sitting for about two hours our of an 8-hour workday (and he requires the ability to sit or stand as needed); pushing or pulling no more than 25 lbs.; climbing, balancing, stooping, and kneeling occasionally; and never bending, crouching, crawling, performing over-the-shoulder work using the right arm, reaching over the shoulders with his right upper extremity, or using his arms forcefully. Lastly, he concluded the claimant has a disability precluding substantial work, and he has lost approximately 75% of his pre-injury capacity for performing activities such as bending, stooping, lifting, pushing, or climbing (Exhibit 1F/11, 12).

The ALJ then provided the following reasons for giving Dr. Madireddi's opinion lesser weight than those of other doctors:

> First, no MRIs, CTs, or other objective evidence support any greater severity in the restrictions set forth in the residual functional capacity stated above. The claimant has only mild disc bulges with no herniated discs, spinal stenosis, neuroforaminal narrowing, or nerve root impingement. There is no demonstrated pathology documented in the record which would substantiate restricting the claimant's functional capacity to a greater extent than that found herein.
>
> Second, even though Dr. Madireddi is the claimant's treating physician, Dr. Madireddi's opinion contrasts with his treatment notes. Notably, on November 16, 2004, Dr. Madireddi reported that the range of motion in the claimant's cervical spine was full in all planes. His upper extremities showed a normal range of motion (Exhibit 21F/20). There was tenderness over his lumbar spine and he had a limited forward flexion to 60 degrees, but his muscle strength in the lower extremities appeared symmetrical at 5/5 (exhibit 21F/20). Thereafter, on January 4, 2007, Dr. Madireddi stated muscle strength in the claimant's lower extremities was symmetrical at

5/5. Straight leg raising while supine on the right side was painless to 90 degrees. The range of motion in his cervical spine was full in all planes (Exhibit 1F/9).

The court finds no error with respect to the ALJ's analysis of Dr. Madireddi's opinions. Specifically, as other doctors noted, Dr. Madireddi's report contains conflicting findings as to range of motion and straight leg raising.

        2.      Dr. Whitten

As to Dr. Whitten, the ALJ stated:

> . . .Consultative psychiatrist Keith Whitten, M.D., opined the claimant's mental impairments only have a mild to moderate impairment on his ability to work (Exhibit 5F/5).

According to plaintiff, the ALJ "tacitly rejected" portions of Dr. Whitten's opinion by failing to discuss them. As discussed above, plaintiff's alleged mental impairment was properly found to be non-severe, largely based on his own statements that he does not have any mental-health related problems with functioning.

      **C.**      **Plaintiff's Credibility**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

/ / /

5/5. Straight leg raising while supine on the right side was painless to 90 degrees. The range of motion in his cervical spine was full in all planes (Exhibit 1F/9).

The court finds no error with respect to the ALJ's analysis of Dr. Madireddi's opinions. Specifically, as other doctors noted, Dr. Madireddi's report contains conflicting findings as to range of motion and straight leg raising.

    2.    Dr. Whitten

As to Dr. Whitten, the ALJ stated:

> . . .Consultative psychiatrist Keith Whitten, M.D., opined the claimant's mental impairments only have a mild to moderate impairment on his ability to work (Exhibit 5F/5).

According to plaintiff, the ALJ "tacitly rejected" portions of Dr. Whitten's opinion by failing to discuss them. As discussed above, plaintiff's alleged mental impairment was properly found to be non-severe, largely based on his own statements that he does not have any mental-health related problems with functioning.

    **C.**    **Plaintiff's Credibility**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

/ / /

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

///
///
///

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to plaintiff's credibility, the ALJ stated:

> At the hearing, the claimant testified that he is unable to work due to daily back pain. The claimant reported to the Social Security Administration that he is unable to sit, stand, or walk for prolonged periods of time (Exhibits 12E/2 and 9E/5). In addition, he indicated that he has difficulty reaching, lifting, walking, and completing tasks (Exhibit 9E/6).
>
> As noted above, the undersigned has already discussed the claimant's allegations of disabling depression, knee and leg pain, and carpal tunnel syndrome and found them to be non-severe under the Social Security Regulations.

///

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The undersigned acknowledges that the claimant was quite limited immediately after a beam fell on his head on March 18, 2004, but the severity of the claimant's impairments in the 12 months following this acute trauma do not show the claimant is as limited as he has alleged. Immediately after the accident, there was no loss of consciousness, and he was diagnosed as having a clinical fracture of the nasal bone but with no evidence of fractures of the facial bones and no evidence of maxillary sinus injury. X-rays of the lumbosacral spine showed some evidence of an L5 compression, but no spondylolisthesis or spondylolvsis and no evidence of degenerative disc space (Exhibit 1F/5). Although the claimant reports he continues to have occipital headaches triggered by injury to his cervical spine, he does not have any visual problems or loss of consciousness or dizzy spells (Exhibit 1F/7). Dr. Madireddi, the claimant's treating doctor, reported that the claimant's tension headaches from cervical strain cause only moderate difficulties and are only mild to moderate in severity occurring occasionally to frequently depending on the claimant's overall stress levels (Exhibit 1F/10). Even the claimant reported that he only experiences headaches on a weekly basis (Exhibit 10E/1).

Repeat physical examinations have not shown any significant abnormalities other than limited range of motion in his back and subjective complaints of back pain. At most, the claimant had moderate tenderness and spasm in the cervical and lumbar spine areas. Motor strength was intact. There were no neurological deficits (Exhibits 3F/2 and 18F/10). Reflexes were normal bilaterally in his upper extremities despite moderate tenderness in his lumbosacral areas and limited ranges of motion (Exhibit 18F/10). His coordination and station were within normal limits (Exhibit 3F/2). He had a normal gait and stance and could heel and toe walk without difficulty (Exhibit 3F/2). A cane or other assistive device has never been prescribed. On consultative evaluation, the claimant's lumbar spine was neither tender on palpation nor did it display spasm. Similarly, there were no spasms or tenderness in his neck (Exhibit 3F/3). Only conservative treatment with medication has been recommended. There is no indication the claimant has been referred for surgery or pain management for his reported complaints. Moreover, despite the claimant's complaints of back pain, the claimant cancelled or failed to show up for several doctor appointments, which suggests that the claimant's symptoms may not be as limited as the claimant has alleged. Treatment notes from Live Oak Physical Therapy show that the claimant cancelled or was a now show on the following dates: November 24, 2008, November 26, 2008, December 1, 2008, December 2, 2008, December 5, 2008 (Exhibit 2F/4). In general, the claimant has not generally received the type of medical treatment one would expect for a totally disabled

individual.

Other factors bearing negatively on the claimant's credibility include the fact that the claimant performs extensive activities of daily living. He reported on his Function Report Adult questionnaire that he mows the lawn, goes outside every morning and each afternoon, drives, shops, and spends times with his friends twice a week (Exhibit 3E/3-5). The claimant is apparently able to care for young children at home and drive them to and from school and to appointments, which can be quite demanding both physically and emotionally (Exhibits 3E/2 and 8E/2). In addition, evidence that the claimant worked after his alleged onset date bears negatively on his credibility. As noted above, the claimant testified that he last worked on a part-time basis for 6 months mowing lawns. Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported.

In addition, objective medical tests failed to show any significant abnormalities, as the claimant has only mild disc bulge with no herniated discs, spinal stenosis, neuroforaminal narrowing, or nerve root impingement. Although a lumbar MRI right after the claimant's accident indicated a recent compression fracture, a cervical spine MRI was normal (Exhibit 1F/3). It demonstrated a disc protrusion resulting in only minimal to mild right neural canal stenosis (Exhibit 1F/2, 3). Later in July 2004, Dr. McCormack concluded that the claimant's MRI studies showed only mild degenerative changes in the cervical and lumbar spine commensurate with his age with no indication for surgery just conservative treatment (Exhibits\ 22F/14, 15). An April 18, 2005, lumbar spine MRI showed a disc desiccation at L4-L5 producing only mild spinal canal narrowing and mild bilateral neural foraminal encroachment. There was a disc desiccation at L5-S1 producing mild spinal canal narrowing and mild bilateral neural foraminal encroachment. There was also mild hyperlordosis of the lumbar spine with the right lateral convexity (Exhibits 1F/2 and 20F/2). As noted above, a December 2009 lumbar spine MRI showed moderate disc desiccation without interspace narrowing at L5-S1 and mild ligamentum flavium infolding. In addition, he had a mild disc bulge without stenosis or nerve root impingement (Exhibit 15F/2).

The court finds that the ALJ's analysis was sound. The objective medical evidence has shown only mild abnormalities. The medical opinion evidence reflects that these abnormalities do not preclude light work activities. And, as the ALJ notes, plaintiff's activities of daily living are quite extensive. Significantly, the court observes again that plaintiff listed few difficulties on the function report submitted with this application for benefits.

/ / /

/ / /

### D. Lay Witness Evidence

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

Plaintiff's wife – Maria Garcia – submitted a third-party statement, which the ALJ discussed as follows:

> As for third party opinion evidence, Mrs. Maria Garcia, the claimant's wife, indicated that the claimant performs few activities during the day other than watching television and driving their children to school (Exhibit 8E/1). She reported the claimant has difficulty lifting, bending, squatting, reaching, standing, walking, kneeling, and climbing stairs (Exhibit 8E/6). The undersigned has considered the statements made by Mrs. Garcia in accordance with SSR 06-03p, including the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence. The statements of Mrs. Garcia do not establish that the claimant is disabled. Since Mrs. Garcia is not medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the statements made by Mrs. Garcia is questionable. Moreover, by virtue of her relationship as the wife of the claimant, Mrs. Garcia cannot be considered a disinterested third party whose statements would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Most importantly, significant weight cannot be given to the statements of Mrs. Garcia because it, like the claimant's, is simply not consistent with the preponderance of the

objective medical evidence in this case.

Plaintiff argues – without support of any direct authority – that the ALJ erred in discounting Mrs. Garcia's statements because she was not a disinterested party. The court does not agree and finds that Mrs. Garcia's relationship as plaintiff's wife provided an obvious reason germane only to her to afford her testimony little probative weight. Finally, upon review of Mrs. Garcia's statement, the court simply does not find that she describes a person who cannot perform the tasks demanded of light work. Other than trouble bending, plaintiff's wife does not describe any serious functional limitations not adequately captured in the ALJ's residual functional capacity finding.

### E.  Application of the Medical-Vocational Guidelines

The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.[1] See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b).

---

[1] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at

"If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities. See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Plaintiff argues that the ALJ erred because his limitations are "non exertional in the main." Other than to apparently build upon arguments previously raised, plaintiff does not offer any specific reasons why the ALJ was incorrect in concluding that plaintiff's non-exertional limitations do not more than minimally impact his ability to perform light work. For the reasons discussed above, the court does not find error in the ALJ's analysis of the severity of plaintiff's

---

a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

impairments or the impact those impairments have on plaintiff's ability to perform light work.

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

    1.    Plaintiff's motion for summary judgment (Doc. 16) is denied;

    2.    Defendant's cross-motion for summary judgment (Doc. 17) is granted; and

    3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED:  September 30, 2013

                                                    **CRAIG M. KELLISON**
                                                    UNITED STATES MAGISTRATE JUDGE